IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DON WESLEY,                        §
                                   §
                    Plaintiff,     §
                                   §  Civil Action No. 3:05-CV-2266-D
VS.                                §
                                   §
YELLOW TRANSPORTATION, INC.,       §
C/O THE FRICK CO.,                 §
                                   §
                    Defendant.     §

MEMORANDUM OPINION
AND ORDER

In this race-based employment discrimination action brought by
plaintiff Don Wesley ("Wesley") under Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C.
§ 1981, Wesley alleges that defendant Yellow Transportation, Inc.
("YTI") is liable for discharging and otherwise discriminating
against him based on his African-American race and for retaliation.
YTI moves for summary judgment. For the reasons that follow, the
court dismisses all of Wesley's Title VII claims, grants in part
and denies in part summary judgment as to his § 1981-based claims,
and raises *sua sponte* that YTI is entitled to summary judgment
dismissing Wesley's § 1981-based retaliation claim. The court also
addresses related motions and both parties' motions for leave to
amend.

Wesley, who is African-American, began his employment with YTI in 1984 as a "casual employee."[1]  A "casual employee" is someone who works on a part-time or as-needed basis.  Approximately six years later, Wesley was hired full time as a "dock checker," and he joined the local chapter of the International Brotherhood of Teamsters.  A collective bargaining agreement ("CBA") between YTI and the union governed the terms and conditions of employment for all YTI employees who are union members.  As a dock checker, Wesley's job responsibilities mainly included loading and unloading freight on and off of trailers, as well as rerouting freight to different locations.

In 1997 Wesley was involved in a heated confrontation with a supervisor that culminated in his discharge for allegedly "creating a hostile work environment" and for "outrageous conduct," in violation of the CBA.  After his discharge, Wesley filed a grievance against YTI under the terms of the CBA.  After union stewards met with YTI's General Operations Manager, Wesley's discharge was reduced to a suspension.

In 2003 Jerome Wilson ("Wilson"), a YTI employee, observed Wesley holding a pornographic magazine in the workplace and

---

[1]The court recounts the evidence in a light favorable to Wesley as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

allowing other employees to view it.  After Wesley admitted to Wilson that the magazine was his, Wilson admonished Wesley and other employees who were present that possession of such material on company property violated company policy (this policy is contained in the YTI Policy Guide to Workplace Conduct) ("Policy Guide")).  Wilson instructed Wesley to remove the pornographic magazine from the workplace, which he did.

Wesley continued, however, to bring pornographic materials to work.  In February 2005 he played a pornographic video in a company break room, precipitating his ultimate termination from employment. A coworker, Mark Bryant ("Bryant"), presumably witnessed the video being played, was offended, and complained to union steward Billy Havard ("Havard").  YTI investigated the incident.  Surveillance video revealed that Wesley had played a pornographic videotape in a company break room during working hours, and, on March 1, 2005, Wesley was discharged for violating the Policy Guide.  Following his discharge, Wesley filed a grievance against YTI pursuant to the CBA.  A grievance committee was formed to investigate, a hearing was held, and the committee ultimately denied Wesley's grievance and upheld his discharge.

On May 25, 2005 Wesley filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"), in which he alleged that YTI discharged him because of his race.  Wesley also alleged that YTI had retaliated against him for picketing against

the union and YTI in 2004. The EEOC determined that Wesley's allegations did not establish a Title VII violation and issued a right-to-sue letter.

Wesley filed this suit *pro se* in November 2005, alleging race-based claims under Title VII and § 1981 for discrimination, discharge, hostile work environment, and retaliation. YTI moves for summary judgment. Now represented by counsel, Wesley opposes the motion.

II

As a threshold matter, the court notes that Wesley has failed in certain respects to comply with N.D. Tex. Civ. R. 56.6. He did not file the electronic version of his appendix as a self-contained document, as required by Rule 56.6(b)(1), and he has failed to follow the pagination requirements of Rule 56.6(b)(3). Rule 56.6(b)(3) requires that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner. The first page must be numbered as '1,' and succeeding pages must be numbered sequentially through the last page of the entire appendix." Rule 56.6(b)(3). Instead, Wesley has submitted nine individual appendix segments that are organized under a largely indecipherable pagination scheme. Given the defects of the electronic filing, the court has relied principally on the paper copy.[2] Notably, this

---

[2]Paper copies of electronic filings have sometimes been referred to as "courtesy" copies. But because this term can be confused with the "courtesy" copies that are submitted when a

version still contains significant pagination deficiencies. As the court notes *infra* at § VI(D)(1), Wesley's failure to comply with the local civil rules has made it difficult (and, in some cases, impossible) for the court to locate some of the evidence on which he relies in his opposition brief.[3] Nevertheless, to the extent Wesley has complied with Rule 56.5(c) and included "citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence," the court will consider Wesley's summary judgment appendix.

Additionally, Wesley's brief does not contain a statement of facts. The court therefore draws its recitation of the facts from Wesley's complaint, YTI's apparently uncontested statement of facts contained in its summary judgment brief, and the factual allegations contained in Wesley's summary judgment response brief (insofar as they are supported by relevant, identifiable citations to the appendix).

-----

filing is made on paper (a "courtesy" copy is a *third* copy, submitted in addition to the original and duplicate paper copies that are required), the court is now using the term "judge's copy" to refer to a paper duplicate of an electronic filing.

[3]For example, in several instances, Wesley refers to YTI's assertion that he was terminated for abuse of company time. But Wesley does not cite summary judgment evidence to support this assertion. Accordingly, the court will only consider YTI's proffered reason for discharge: that Wesley played a pornographic video on company time, in violation of company policy.

YTI moves for summary judgment dismissing Wesley's claims. Except as to the affirmative defenses addressed below, Wesley will bear the burden of proof at trial. YTI can therefore meet its summary judgment obligation by pointing the court to the absence of evidence to support the claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, Wesley must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id. at 324; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Summary judgment is mandatory if Wesley fails to meet this burden. *See Little*, 37 F.3d at 1076. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Wesley's failure to produce proof as to any essential element renders all other facts immaterial. *See Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).

YTI contends that, except for Wesley's discriminatory discharge claim, his Title VII claims are barred because they were not exhausted. YTI argues that Wesley failed to exhaust his administrative remedies with respect to discrimination claims based on denial of promotions, disproportionate workload, unfair break

times, and attendance warnings.

A

YTI maintains that because Wesley's EEOC charge did not refer to these allegations, he cannot rely on them to recover against YTI. It also contends that Wesley failed to exhaust his hostile work environment claim because his charge fails to allege facts supporting such a claim, and because this claim does not, as a matter of law, "grow out" of an EEOC charge alleging race-based discrimination. YTI does not argue, however, that Wesley failed to exhaust his Title VII retaliation claim. The court holds that the retaliation claim is properly exhausted because Wesley expressly asserted it in his EEOC charge.

Wesley responds that he did exhaust these claims. He posits that he asserted in his charge that he was "discriminated against because of [his] race" and "in retaliation for picketing against the company for hiring practices, safety, working conditions and fair treatment for all employees." P. Br. 3 (quoting D. App. 458). Additionally, Wesley posits that he was unrepresented by counsel when he filed the charge; that he checked the "race discrimination" box on the charge form; that his discrimination statement indicated retaliation for picketing "hiring practices, working conditions and fair treatment for all employees," id.; and that the charge form did not contain separate boxes for "racial harassment" and "racial discrimination." Wesley contends that "an investigation by the

EEOC of the specifics of the matters referenced in the Charge, including the continuing nature of the conduct for which they were picketing, should have been reasonably likely to grow out of the initial charge of discrimination." P. Br. 5.

Wesley also contends that to the extent his charge is itself insufficient to exhaust his claims, he is entitled to "piggyback" on the EEOC charges of the plaintiffs in *Arrieta v. Yellow Transportation, Inc.*, No. 3:05-CV-2271-D, a related suit pending in this court, because he is similarly situated to those plaintiffs. Among other things, Wesley contends that the EEOC charges of the named plaintiff in the *Arrieta* litigation assert that "[e]mployees have been subjected to racist and discriminatory writings and graffiti on company equipment, [on] company premises including bathroom walls . . ."; "[e]mployees including myself have been subjected to racist language and to nooses . . ."; and that "[m]inority employees including myself have had our work lockers sabotaged by having glue poured into our locks on several occasions . . . ." P. Br. 6. Wesley also points generally to "numerous references" of minority employees being subjected to discrimination concerning their workloads, job duties, "hindered job production," and credit for job production. He refers to additional charge allegations made by John Ketterer, an *Arrieta* plaintiff.[4]

_____

[4]The court need not recount these additional charge allegations in view of its disposition of this issue.

Wesley also appears to imply that his Title VII hostile work environment claim is within the scope of the EEOC charge because it is like or related to, or could reasonably be expected to have grown out of, the complaints alleged in his own EEOC charge. In the part of his response brief that addresses exhaustion, Wesley only specifically mentions his Title VII hostile work environment claim once, asserting that "as long as the discrimination statement references some of the type of conduct that allegedly creates a hostile work environment, that is sufficient." P. Br. 4 (citing *Perez v. MCI World Commc'ns.*, 154 F.Supp.2d 932 (N.D. Tex. 2001) (Buchmeyer, C.J.)). Additionally, Wesley points out that a § 1981 claim need not be exhausted. *See, e.g., Alpha Portland Cement Co. v. Reese*, 507 F.2d 607, 608-10 (5th Cir. 1975); *King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Fitzwater, J.).

YTI replies that Wesley cannot "piggyback" on the allegations contained in the *Arrieta* plaintiffs' EEOC charges because the "piggybacking" doctrine does not apply under the circumstances presented here. YTI posits that the only "personal harm" identified in Wesley's charge is his discharge, and it notes that, according to the charge, the alleged discrimination and retaliation took place only on the day of Wesley's discharge. YTI therefore argues that the charge only alleges that Wesley was subjected to disparate treatment and retaliation *when he was discharged*. It

argues that, to the extent Wesley maintains that he suffered disparate treatment in the form of disproportionate workloads, unfair break times, and/or attendance warnings, those claims are not properly exhausted. YTI also replies that merely alleging a race-based discharge in an EEOC charge is insufficient of itself to exhaust a hostile work environment claim. It argues that because Wesley testified he never informed the EEOC of his hostile work environment allegations, and the EEOC could not have investigated a claim of which it had no notice, that claim is not properly exhausted.

B

There is a split of authority within the Fifth Circuit about whether the Title VII exhaustion requirement implicates the court's subject matter jurisdiction. *Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."). Because this case does not present issues of waiver or estoppel, the court need not resolve this question in deciding YTI's summary judgment motion. Although for the sake of convenience the court will discuss exhaustion in jurisdictional terms, the result of today's decision would be the same if the court considered exhaustion to be "merely a prerequisite to suit."

*Id.*

The filing of an administrative complaint is ordinarily considered a jurisdictional prerequisite to a Title VII action. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (citing *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980)), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414 (2006)). In other words, federal courts do not have jurisdiction to consider unexhausted Title VII claims. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994) (citing *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990) (per curiam)). Exhaustion does not occur until the plaintiff files a timely charge with the EEOC and is entitled to receive a "right-to-sue" letter. 42 U.S.C. § 2000e-5(e) and (f); *see also Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). "The lawsuit that follows is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination. In other words, the complaint may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citations omitted).

The single-filing rule that permits one Title VII plaintiff to "piggyback" on the allegations contained in another Title VII plaintiff's EEOC charge is a "carefully limited exception" to the

Title VII exhaustion requirement. It enables plaintiffs who have not filed EEOC charges to "join or intervene in a lawsuit in which the original, similarly situated plaintiff had fully exhausted the administrative requirements." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). The single-filing rule only applies if the non-filing plaintiff is similarly situated to the filing plaintiff, the EEOC charge provided notice of the collective or class-wide nature of the charge, and the individual who filed the EEOC charge filed a lawsuit that the non-filing plaintiff is permitted to join. *Id.* at 599 (citing *Bettcher v. The Brown Schs., Inc.*, 262 F.3d 492, 494 (5th Cir. 2001)). The doctrine does not apply where the respective plaintiffs filed separate EEOC charges and separate lawsuits. *See id.* ("A non-charging party cannot bring her own independent lawsuit based upon another party's charge.").

C

Although previously a plaintiff in *Arrieta*, Wesley moved to sever his claims from that case and consolidate them with the claims in the present, independent lawsuit. The court granted the motion in a March 5, 2007 order. Because Wesley is now pursuing a separate suit, he cannot invoke the separate filing rule. This follows from the requirement that a "non-charging party cannot bring [his] own independent lawsuit based upon another party's charge." *Id.* As explained in *Price*, the rule operates to "allow[ ] parties *to opt-in* to a suit filed by any similarly

- 12 -

situated plaintiffs . . . ." *Id.* at 598 (emphasis added) (internal quotation marks omitted). Moreover, the Fifth Circuit has explained that part of the purpose of the rule is to avoid unnecessary filings of EEOC charges where the substance of the complaints is identical. *Id.* ("[I]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC.") (internal quotation marks omitted). It follows that the doctrine is not meant to apply to a party who has opted to file his own separate EEOC charge. Therefore, because Wesley has filed a separate EEOC charge and is pursuing a separate suit, he cannot invoke the single-filing rule. Consequently, the court will not consider the EEOC charges of the *Arrieta* plaintiffs in deciding whether Wesley has met the Title VII exhaustion requirement with respect to his non-discharge, race-based discrimination claims.

The court must still consider, however, whether Wesley's EEOC charge is sufficient to exhaust the claims included in this lawsuit. Wesley's charge shows that he checked boxes on the form for "discrimination based on race" and "retaliation." D. App. 458. Wesley alleged "discharge" as the "personal harm," *id.*, and he described YTI's reason for discharging him as "theft of company time and outrageous conduct (playing pornographic videos on company time and displaying pornographic materials)." *Id.* In his "Discrimination Statement," Wesley alleges:

> I believe that I have been discriminated
> against because of my race, Black in violation
> of Title VII of the Civil Rights Act of 1964,
> as amended in retaliation for picketing
> against the company for hiring practices,
> safety, working conditions and fair treatment
> for all employees Sections 704(a) Title VII of
> the Civil Rights Act of 1964 as amended.

*Id.* Wesley now seeks, *inter alia*, Title VII relief based on failure to promote, disproportionate workload, unfair break times, attendance warnings, retaliation, and a hostile work environment.

As the court explains *infra* at § V(B), Wesley's § 1981 failure-to-promote claim is barred by limitations. The claim under Title VII also fails, however, because it is not properly exhausted. *See, e.g., Page v. Howard Indus., Inc.*, 2006 WL 3511454, at *3 (S.D. Miss. Dec. 5, 2006) (holding that plaintiff's failure-to-promote allegations were not contained within EEOC charge, that the allegations only related to discriminatory discharge, and that even giving EEOC charge liberal construction, court could not say that EEOC investigation of failure to promote could reasonably be expected to grow out of charge of unlawful termination, which was entirely different allegation based on entirely different set of facts); *Burton v. Madix Store Fixtures*, 2006 WL 247897, at *1 (N.D. Tex. Feb. 1, 2006) (Lindsay, J.) (adopting magistrate judge recommendation that, *inter alia*, Title VII plaintiff failed to exhaust administrative remedies regarding failure-to-promote claim where there were no allegations in EEOC charge regarding failure to promote).

With respect to Wesley's remaining claims based on allegations of disproportionate workloads, unfair break times, attendance warnings, and hostile work environment, the court must consider whether these claims are sufficiently "like or related to" allegations contained in Wesley's EEOC charge. *See Hayes*, 2004 WL 1283965, at *6. Wesley neither mentions in his charge that he was subjected to a hostile work environment, nor does he allege any facts that, liberally construed, could reasonably be expected to lead to the investigation of such a claim. *See, e.g., id.* at *7 (holding that EEOC charge that complained of denial of promotions, unequal pay, and race discrimination did not exhaust hostile work environment claim, that passages on which plaintiff relied were not like or related to claim of racially hostile work environment, and that EEOC investigation of such claim could not reasonably be expected to grow out of the charge). Wesley's charge does not contain allegations concerning disproportionate workload, unfair break times, or attendance warnings, or any allegations that could be considered "like or related to" the claims at issue. Rather, the charge refers to race-based discrimination and retaliation for picketing against the company. As noted, the only harm Wesley identifies in the charge is his discharge, and the complained-of conduct is alleged only to have occurred on the date of Wesley's discharge. *See* D. App. 458. This is insufficient to exhaust Wesley's Title VII claims insofar as they are based on

disproportionate workload, unfair break times, attendance warnings, and hostile work environment.

Accordingly, the court dismisses these claims on the basis that Wesley did not exhaust them.

V

YTI next argues that Wesley's failure-to-promote claim is barred by limitations because it is based on events that occurred between 1984 and 1987. Wesley did not file his EEOC charge until May 2005——nearly 20 years after the alleged promotion denials occurred. YTI posits that these discrete acts are no longer actionable because Wesley failed to timely file a charge based on them.

A

Because YTI will bear the burden of proving this affirmative defense at trial, it "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Wesley carries the burden, however, of avoiding the limitations bar based on the equitable exception of the continuing violation doctrine. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). If YTI points the court to the absence of evidence to support the application of the continuing violation doctrine, Wesley must go

beyond his pleadings and designate specific facts showing there is a genuine issue for trial.

Claims brought pursuant to § 1981 are generally subject to a four-year limitations period. *Jones v. R&R Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (204) (holding that four-year limitations period established by 28 U.S.C. § 1658 applies to § 1981 actions based on employment discrimination claims made possible by the 1991 Civil Rights Act amendments to § 1981). In deferral states such as Texas, a Title VII plaintiff must file an EEOC charge within 300 days after the alleged unlawful practice occurred. The 300-day filing period is not jurisdictional, but rather is more akin to, and operates as, a limitations period. The period commences on the date the alleged unlawful practice occurred. *E.g., Stith v. Perot Sys. Corp.*, 2004 WL 690884, at *3 (N.D. Tex. Mar. 12, 2004) (Fitzwater, J.) (footnote and citations omitted), *aff'd*, 122 Fed. Appx. 115 (5th Cir. 2005).

The "continuing violation" doctrine is "an equitable exception to the statutory period." *Davis v. Metwest, Inc.*, 1999 WL 102814, at *2 (N.D. Tex. Feb. 24, 1999) (Fitzwater, J.) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989)). "Although there is no definitive standard for what constitutes a continuing violation, the plaintiff seeking to invoke this doctrine must demonstrate more than a series of discrete discriminatory acts[.]" *Celestine*, 266 F.3d at 352. "'He must show an organized scheme

- 17 -

leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.'" *Id.* (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)).

"[A] one-time employment event, including the failure to hire, promote, or train and dism[iss]als or demotions, is 'the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.'" *Id.* (quoting *Huckabay*, 142 F.3d at 240). "'[D]iscrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment' and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine." *Id*. (quoting *Huckabay*, 142 F.3d at 240).

B

Wesley argues that "at least some of the racially hostile acts and differences in working conditions . . . fall within the time period," P. Br. 2, but he does not specify the acts and differences in working conditions to which he is referring. Wesley does not mention——much less address——any failure-to-promote claim in his summary judgment response. He neither specifically responds to YTI's argument that this claim is barred by limitations, nor does he demonstrate that the claim is timely raised based on events that occurred within the limitations period or pursuant to the "continuing violation" doctrine, assuming it applies.

For these reasons, the court holds that Wesley has failed to adduce evidence of a continuing violation that would enable a reasonable jury to find that his § 1981-based failure-to-promote claim is not barred by limitations.

VI

YTI argues that Wesley cannot establish a prima facie case of discriminatory discharge because he cannot show that a similarly-situated non-African-American employee was treated differently. YTI also posits that it had a legitimate, nondiscriminatory reason for Wesley's discharge, and it argues that Wesley cannot demonstrate pretext.

A

YTI posits that Wesley cannot identify an individual who committed the offense for which Wesley was discharged. YTI defines the offense as playing a pornographic video at work, and it argues that Wesley's testimony establishes that two Caucasian supervisors were discharged for violating company policy that prohibits possessing pornographic materials in the workplace. YTI maintains that because Wesley cannot show that a similarly-situated non-African-American employee received preferential treatment under "nearly identical" circumstances, he cannot establish a prima facie case.

Wesley argues that any employee who engaged in any "outrageous conduct," as that term is used in the CBA, is "similarly situated."

He adduces evidence of numerous Caucasian employees who engaged in activities that qualify as "outrageous conduct" prohibited under the CBA. Wesley also posits that Caucasian employees and supervisors of the bargaining unit brought pornography to work, watched pornography at work, and were not disciplined or discharged. According to Wesley, Mike Patterson ("Patterson"), a Caucasian employee, was not discharged after he exchanged a pornographic tape for a training tape during a "haz-mat" training seminar.

B

To establish a prima facie case of discriminatory discharge under Title VII and § 1981, Wesley must show that he (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that other similarly-situated employees were treated more favorably. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based § 1981 claims); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). The "similarly situated" requirement has been strictly interpreted in this circuit to mean "nearly identical." *E.g., Ryburn v. Potter*, 155 Fed. Appx. 102, 107 (5th Cir. 2005) (per curiam) (quoting *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000)); *Torrez v. Milk Prods. L.P.*, 402 F.Supp.2d

773, 778 (W.D. Tex. 2005). Therefore, to establish a prima facie case, a Title VII and/or § 1981 plaintiff must show that others who engaged in "nearly identical" misconduct were not discharged. *See, e.g., Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982)).

Here, the parties principally dispute whether the fourth element——the "similarly situated" element——is met in this case. Wesley contends that, among other things, some non-African-American workers brought pornography to work, displayed it publicly and in the presence of supervisors, but were not disciplined. He adduces evidence that Patterson——who is Caucasian——exchanged a pornographic tape for a training tape at a "haz-mat" training session, that the pornographic tape was played during company time to employees, and that Patterson was neither disciplined nor discharged.

Because it does not affect the outcome of this decision, the court will assume *arguendo* that Wesley has met his burden of establishing a prima facie case based on Patterson as a comparator. This conclusion obligates YTI to produce evidence that it had a legitimate, nondiscriminatory reason for terminating Wesley's employment. *See Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *5 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *St. Mary's Honor Ctr.*, 509 U.S. 502, 506-07 (1993)).

C

The court concludes that YTI has met its burden of production. It relies on summary judgment evidence that Wesley violated company policy by playing a pornographic video in the break room on company time. Misconduct of this type constitutes a legitimate, nondiscriminatory reason for terminating someone's employment. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *6 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) ("An employee's violation of a company work rule is a legitimate, nondiscriminatory reason for discharging him."). Furthermore, Wesley admitted in his deposition that he had played the pornographic video in the company break room.

D

Because YTI has satisfied its burden of producing a legitimate, nondiscriminatory reason for Wesley's discharge, in order for Wesley to survive summary judgment, he must create a genuine issue of material fact regarding the ultimate question of discrimination.

1

Under the modified *McDonnell Douglas* approach, Wesley can do this in one of two ways. Under the pretext alternative, he can offer sufficient evidence to create a genuine issue of material fact that YTI's reason is not true, but is instead a pretext for discrimination. Under the mixed-motives alternative, he can offer

sufficient evidence to create a genuine issue of material fact that YTI's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Wesley's protected characteristic.

Wesley relies on the pretext alternative. Under this approach, Wesley can satisfy his burden by showing "that the legitimate reasons offered by [YTI] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). That is, he must produce sufficient evidence for a reasonable jury to find either that YTI's proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated YTI's decision to terminate him. *See Burdine*, 450 U.S. at 256. "[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).

Wesley asserts that pretext is demonstrated by evidence of mendacity in YTI's explanation for the discharge and a lack of credibility of its witnesses. In support of this contention, he alleges that YTI's basis for termination is contradicted by affidavit testimony. Wesley refers to an affidavit of John Derry ("Derry"), Vice President of Human Resources, in which he asserts

that YTI investigated Wesley in response to a complaint by coworker Bryant concerning Wesley's playing of the pornographic video tape. Wesley contends that this statement is contradicted by Bryant's own testimony, in which he denied making the complaint to management.

The court concludes that a reasonable jury could not find that the testimony truly conflicts or that it undermines the credibility of YTI's account or witnesses. YTI does not contend that Bryant directly complained to management, or that YTI decided to terminate Wesley based on this complaint alone. Although YTI states that the basis of the investigation was Bryant's complaint, it does not address how it received notice of the complaint.

Wesley also argues that the overall pervasiveness of pornographic material on company premises is evidence that the company is not truly interested in enforcing its policy prohibiting pornography, and that this indicates pretext. Although Wesley's evidence suggests that YTI does not uniformly enforce its policy against pornography, it is significant that, according to the summary judgment evidence, two of the only three employees who were disciplined or discharged for pornography-related offenses were Caucasian supervisors.[5] Accordingly, a reasonable jury could not

---

[5]Wesley also cites as evidence of pretext some of the circumstances of his termination. Because of briefing deficiencies, the court is unable to locate in Wesley's appendix the pages he cites in support of his summary judgment response. Specifically, the court notes that, in this section of Wesley's argument, the name of the person cited in the brief——"Mr. Cardston"——does not correspond to the name on the affidavit——"Larry

find from this evidence that YTI's reliance on its anti-pornography policy is pretextual.

2

Having concluded that Wesley has not adduced evidence that is sufficient to permit a reasonable jury to find that YTI's proffered reason for discharging him is unworthy of credence, the court now considers the additional arguments on which Wesley relies to establish pretext.

"In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Carter v. Farmers Rice Milling Co.,* 33 Fed. Appx. 704, at *3 (5th Cir. 2002) (per curiam) (citing

---

Christon"——and that some of the pages of the testimony are duplicated, while others are missing. *See* P. Br. 36 and P. App. 635, 636, and 640. It is well settled that the court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). "Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citing *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)). "Rule 56, therefore, saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones*, 82 F.3d at 1338. Moreover, under N.D. Tex. Civ. R. 56.5(c), "[a] party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164, 168 (5th Cir. 1999)).

Wesley argues that the evidence of more favorable treatment granted to non-minority employees, and of the racially derogatory comments and drawings present at the workplace——together with the supervisors' failure to correct such conduct——support a finding of pretext. In advancing these two arguments, Wesley essentially relies on the same evidence on which he bases his disparate treatment and hostile work environment claims.

YTI contends that the disparate treatment evidence constitutes inadmissible anecdotal evidence that only concerns the experiences of other individuals, and that the proof of racial animus does not establish pretext because it does not implicate management or those who were involved in the decision to discharge Wesley. In support of this contention, YTI points to Wesley's deposition testimony, in which he states that none of his managers or supervisors made any racial comments to him.

The court concludes that Wesley's evidence of disparate treatment or racial animus in the workplace is insufficient to permit a reasonable jury to find pretext, because the evidence is not sufficiently related to his discharge. As an initial matter, the disparate treatment evidence concerns the working conditions and standards of discipline, but it is not probative of racially disparate standards in employment-termination decisions. The

relevant area of inquiry is YTI's enforcement of its pornography-prohibition policy. On this point, Wesley fails to go beyond his prima facie showing and does not adduce additional evidence of racially disparate standards. Notably, as already discussed, it is undisputed that two Caucasian supervisors were subject to termination for similar pornography-related offenses. Although the court has assumed *arguendo* that the Patterson incident satisfied Wesley's prima facie burden, this evidence is alone insufficient to establish pretext.[6]

Wesley argues that the subjective nature of the decisionmaking process in the termination decision supports a finding of pretext, and he cites Supreme Court and Fifth Circuit cases for the proposition that subjective decisionmaking can be the basis for a finding of discrimination. Wesley's reliance on this proposition is misplaced. YTI's reason for discharging Wesley was not based on subjective performance or character evaluation criteria, but on a

---

[6]Although *Reeves* teaches that, even without additional evidence of discrimination, a prima facie case "may permit the trier of fact to conclude that the employer unlawfully discriminated," this is true when the prima facie case is "*combined* with sufficient evidence to find that the employer's asserted justification is false." *Reeves*, 530 U.S. at 148 (emphasis added). The Supreme Court in *Reeves* determined that the employee had "made a substantial showing that [the employer's] explanation was false," *id.* at 144, and the employee was thus not required to adduce additional evidence of discrimination. As already discussed above, however, Wesley has not shown that YTI's explanation for his discharge is false. Accordingly, he cannot simply rest on his prima facie case to satisfy his burden at the pretext stage of the *McDonnell Douglas* analysis.

clear and objectively established violation of company policy. Moreover, the grievance committee's decision to uphold the discharge would only permit a reasonable jury to find that YTI's basis for terminating Wesley was sufficiently objective. Wesley has not adduced evidence that the grievance committee's decision was tainted by discriminatory animus.

Finally, Wesley argues that YTI's investigation of his alleged misconduct was inadequate and biased. Wesley contends that there is no evidence of any investigation into his playing the pornographic tape. YTI responds that no additional investigation was warranted, because Wesley readily admitted that he played the pornographic tape. Wesley has not adduced evidence that the investigation deviated from standard procedure, or that there were contested factual issues that warranted a more thorough investigation. A reasonable jury could not find pretext on this basis.

Consequently, the court holds that Wesley has not adduced sufficient evidence to enable a reasonable jury to find that YTI's proffered reasons are unworthy of credence, or that Wesley has otherwise satisfied his burden of adducing evidence that YTI's stated reason for discharging him is pretextual.

The court therefore grants YTI's motion for summary judgment on plaintiffs' discriminatory termination claim under Title VII and § 1981.

The court now considers whether YTI is entitled to summary judgment dismissing Wesley's § 1981 disparate treatment claims based on disproportionate workload, break times, attendance policy, and disparate discipline.[7]

A

YTI maintains that Wesley's § 1981 disparate treatment claims for disproportionate workload, break times, attendance policy, and discipline all fail because none of them constitutes an actionable adverse employment action. YTI posits that only "ultimate employment decisions," such as hiring, discharging, promoting, compensating, and granting leave are actionable adverse employment actions. It posits that Wesley's disparate treatment claims do not meet this requirement.

Wesley responds that YTI's argument is misplaced, because in the context of a § 1981 claim alleging disparate treatment, a plaintiff is not required to establish an "ultimate employment action" to meet the requirement of showing a prima facie case. Wesley argues that under the Supreme Court's decision in *Burlington Northern*, 548 U.S. 53, 126 S.Ct. 2405, he need only show that the adverse action affected or altered a term or condition of his employment. Wesley adduces evidence that "on a near daily basis,"

---

[7]As the court holds supra at § IV(C), to the extent these claims are brought under Title VII, they are dismissed as not exhausted.

he was subjected to shorter breaks and a much heavier and more difficult workload than were Caucasian employees, and that Caucasian employees were permitted to take excessively long breaks, not work full eight-hour shifts, and that they slept or talked on the telephone on the job, without repercussions.

YTI replies by renewing its contention that Wesley is obligated, but has failed, to establish an adverse employment action. YTI fails, however, to distinguish between Wesley's Title VII- and § 1981-based disparate treatment claims.

B

Even before the Supreme Court decided *Burlington Northern*, this court recognized that a § 1981 plaintiff alleging racial discrimination was not necessarily required to premise his claims on an "ultimate employment decision." *See Hayes*, 2004 WL 1283965, at *11 n.13 ("the court . . . disagrees that § 1981 claims must be based on ultimate employment decisions."); *Core v. Sprint/United Mgmt. Co.*, No. 3:96-CV-2265-D, slip op. at 9-10 (N.D. Tex. Oct. 24, 1997) (Fitzwater, J.) ("[t]he plain language of § 1981 . . . makes clear that both ultimate employment decisions and vague actions that interfere with 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship' fall within its scope.") (citing 42 U.S.C. § 1981(b)). The court had also noted that, in the Title VII context, the requirement of an "ultimate employment decision" related to claims for retaliation,

not discrimination. *Hayes*, 2004 WL 1283965, at *11 (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003); *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999)).

Accordingly, the court rejects YTI's argument that Wesley's allegations relating to disproportionate workload, break times, attendance policy, and disparate discipline are barred on the basis that they do not constitute "ultimate employment decisions." Because YTI sets out no other basis for challenging Wesley's discrimination claims discussed in this section, YTI is not entitled to dismissal of these claims.

VIII

The court now addresses Wesley's retaliation claim. For the reasons that follow, the court grants summary judgment in YTI's favor on Wesley's Title VII-based retaliation claim. Wesley also appears to allege a claim for retaliation under § 1981. *See* Compl. 2 ("Plaintiff['s] bases for discrimination [are] racial . . . harassment and retaliation."). The court raises *sua sponte* that YTI is entitled to summary judgment dismissing Wesley's § 1981-based retaliation claim, and it grants Wesley 60 days from the date of this memorandum opinion and order to file a response and appendix that demonstrates why summary judgment should not be granted in this respect.[8]

---

[8]Normally, the court would set a shorter period for filing his response. Here, however, Wesley's counsel submitted a sealed pleading on January 15, 2008 in connection with a trial continuance

YTI argues that Wesley's retaliation claim fails as a matter of law because he cannot show that he engaged in any activity protected under Title VII.  It posits that Wesley testified that during his employment he never complained to YTI about discrimination or retaliation.   YTI also contends that, even assuming that picketing against the union and YTI constitutes protected activity under Title VII, Wesley's claim fails because of the absence of a causal link between the picketing and his discharge, and because Wesley cannot show pretext.  YTI's argument principally focuses on undermining a causal link between any protected activity and Wesley's discharge.   YTI also asserts, however, that Wesley's allegations of non-discharge-related retaliatory conduct fail because they are time-barred, and thus not actionable, and that the "continuing violation" doctrine does not apply to Title VII-based retaliation claims.

Wesley responds that he engaged in protected activity in the form of picketing directed at YTI concerning the company's alleged mistreatment of minority employees.  Wesley also adduces evidence that he complained to his supervisors on numerous occasions about discrimination.  He argues that to establish the requisite causal link between the protected activity and his discharge, he need only show that the protected activity and the adverse action are "not

motion that explains why a longer period is fair.

'wholly unrelated.'" P. Br. 47 (citing *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). In his response brief, Wesley does not appear to rely on any other independent retaliatory action other than his discharge. *See* P. Br. 46 and 49 (discussing non-discharge related retaliatory conduct "as additional evidence of the causal connection" between the protected activity and his *discharge*). The court therefore need not address whether the non-discharge-related retaliatory actions on which Wesley relies are sufficient to support an independent claim for retaliation——regardless whether they are time-barred——because Wesley does not appear to assert, much less provide support for, such a claim.

As proof of the causal link between the alleged protected activity and his discharge, Wesley adduces evidence that he picketed as late as November or December 2004, within three months of his termination, and that he received a written warning and was at that time unjustifiably called before a supervisor for alleged attendance problems, and was also orally warned on a separate occasion about his attendance. As evidence of the causal link, Wesley also posits that protesters were considered "troublemakers" and suffered retaliation at the hands of both supervisors and coworkers. He adduces evidence that Shift Operations Manager Bob Lynch spit at him in November or December 2004, that minority employees who picketed or complained against the union or YTI were

labeled as "troublemakers" and were either disciplined or terminated, and that minority employees who complained of discrimination also suffered other retaliatory conduct. Wesley cites a number of examples that he contends demonstrate retaliatory conduct, such as Caucasian employees placing a used condom on a minority employee's forklift; an air line cut in a minority employee's hostling Mule; extra work assignments for minority employees; refusal to acknowledge or associate with minority employees; racial drawings ridiculing minority employees as "babies" and "tattletales"; and Caucasian employees attempting to bait minority employees into fights, in order to have them fired. P. Br. 49.

YTI replies by renewing its argument that, even if Wesley engaged in a protected activity, he cannot show that the protected activity was the "but for" cause of his discharge. YTI posits that evidence of mere temporal proximity is alone insufficient to establish causation or pretext. YTI also maintains that Wesley's own argument reveals that his engaging in the alleged protected activity did not alter his work environment, and that evidence of the discipline received by other employees is irrelevant. YTI also points to the fact that a neutral grievance committee, composed of impartial observers, upheld YTI's decision to terminate Wesley.

Under the familiar burden-shifting paradigm, Wesley must first establish a prima facie case of Title VII retaliation. This requires that he demonstrate that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action. *Walker*, 2005 WL 2278080, at *9 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). "[T]iming can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 418 n.9 (5th Cir. 2003) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)).

If Wesley establishes a prima facie case, the burden shifts to YTI to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of proof. If YTI meets its production burden, Wesley must adduce evidence that would permit a reasonable jury to find that the adverse employment action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9.

"At the summary judgment stage, the nonmovant need only point to the existence of a genuine issue of material fact." *Id.* (quoting *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (internal

quotation marks omitted)).  "The ultimate determination in an unlawful retaliation case is whether the conduct protected . . . was a 'but for' cause of the adverse employment decision."  *Id.* (quoting *Long*, 88 F.3d at 305 n.4).

"After the employer has produced evidence to rebut the employee's prima facie case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a prima facie case."  *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n. 4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (emphasis in original) (citing *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998)); *Long*, 88 F.3d at 305 n.4).  And evidence of temporal proximity between the protected act and the adverse employment action is alone insufficient to prove "but for" causation.

> To prevent future litigants from relying on temporal proximity alone to establish but for causation, we once again attempt to clarify the issue.  In *Clark County School District v. Breeden*, the Supreme Court noted that cases that accept mere temporal proximity as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.  *Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation.  But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.

*Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 808 (5th

Cir. 2007) (addressing Title VII) (citations, internal quotation marks, and ellipsis omitted).

Traditionally, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." The Supreme Court, however, "has recently broadened the meaning of actionable adverse employment action for the purposes of Title VII retaliation claims." *Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.) (quotation marks and citations omitted) (quoting *Newman v. Coll. of Mainland*, 2006 WL 3391445, at *5 (S.D. Tex. Nov. 21, 2006), and *Rodriguez v. Gonzalez*, 2006 WL 2844185, at *4 (S.D. Tex. Oct. 2, 2006)), *appeal docketed*, No. 07-10555 (5th Cir. May 18, 2007).

> In [*Burlington Northern*] the Court rejected the "ultimate employment decision" standard--an exclusive list of actions such as hiring, [g]ranting leave, discharging, promoting and compensating. The Court instead adopted the broader "material adverse standard"-meaning an action which might dissuade a reasonable worker from making a charge of discrimination or sexual harassment.

*Id*. at *17 (quoting *Rodriguez*, 2006 WL 2844185, at *4 (citations omitted)). Because Wesley relies solely on his discharge——which clearly meets the "material adverse standard"——the court need not engage in any further analysis under this element.

YTI has discharged its initial burden of pointing to the absence of evidence to support Wesley's prima face case of Title VII retaliation. Specifically, YTI cites the absence of evidence that Wesley engaged in a protected activity.[9]

Even assuming *arguendo* that Wesley has established a prima facie case of retaliation on the basis of his complaints and picketing and ultimate discharge, Wesley's claim fails. YTI has articulated a legitimate, nondiscriminatory reason for Wesley's discharge. Because YTI has satisfied its burden under the second *McDonnell Douglas* step, the burden shifts back to Wesley to adduce evidence that the adverse action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9. At its core, Wesley's causation argument appears to be based entirely on "suspicious timing." That is, Wesley principally relies on the temporal proximity between his complaints and picketing and his discharge to establish the element of "but for" causation. As noted, evidence of temporal proximity between the protected act and the adverse employment action is alone insufficient to prove "but for" causation.

Wesley attempts to raise a genuine issue of material fact concerning "but for" causation by pointing to a series of discrete

---

[9]Wesley's § 1981-based retaliation claim, however, survives summary judgment because YTI has not moved for summary judgment on that claim.

retaliatory acts by coworkers and supervisors (recounted above).
But Wesley neither explains how these acts establish the causation
element of his Title VII retaliation claim, nor does he cite any
relevant authority in support of this apparent assumption.[10]  It is
not clear to the court how independent, discrete acts that are
retaliatory in nature (but not relied on to state independent
claims for retaliation) are sufficient to establish that Wesley's
picketing and complaints of discrimination in the workplace were
the "but for" cause of his discharge.  Even assuming that the acts
occurred, they are not sufficient to permit a reasonable jury to
find that Wesley was discharged in retaliation for picketing and
complaining against the company regarding discrimination.  This is
especially so considering that the undisputed evidence strongly
suggests that the "but for" cause of Wesley's termination was the
fact that he played a pornographic video in a company break room on
company time.

---

[10]Wesley's reliance on *Woodhouse v. Magnolia Hospital*, 92 F.3d
248, 254-55 (5th Cir. 1996), is misplaced.  Wesley cites this case
for the proposition that "discriminatory comments made by employees
of a defendant who are *not* a part of the decision making process
should be considered by the jury, as such comments may raise an
inference of intentional discrimination."  P. Br. 49.  *Woodhouse*,
however, does not stand for this proposition.  In *Woodhouse* the
Fifth Circuit in fact determined that the "employee" in question (a
board member of the defendant hospital) was sufficiently involved
in the decisionmaking process, and on this basis rejected the
appellant's argument to the contrary.  *Woodhouse*, 92 F.3d at 254.
As such, *Woodhouse* does not support Wesley's contention that the
coworker and supervisor conduct, although arguably retaliatory in
nature, establishes that Wesley's conduct was the "but for" cause
of an entirely separate discharge decision.

Concluding that Wesley has failed to raise a genuine issue of material fact with respect to Title VII retaliation, the court grants YTI's motion for summary judgment and dismisses Wesley's Title VII retaliation claim.

D

Because YTI only moves for summary judgment on Wesley's Title VII-based retaliation claim and has not with sufficient clarity moved for summary judgment on his § 1981 retaliation claim, it would be error to grant summary judgment on that claim at this time. *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987) (holding that it is error to grant summary judgment on ground not raised). The court will, however, raise *sua sponte* that YTI is entitled to summary judgment dismissing Wesley's § 1981-based retaliation claim. *See, e.g., Jackson*, 2006 WL 680471, at *9 (holding that court is permitted to raise summary judgment *sua sponte*, provided it affords nonmovant notice and a fair opportunity to file an opposition response) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)). If he desires to oppose summary judgment on this basis, Wesley must file a supplemental brief, and an appendix that contains any supporting evidence, within 60 days of the date this memorandum opinion and order is filed. If he does not, the court will grant summary judgment in favor of YTI dismissing Wesley's § 1981-based retaliation claim.

If he does respond, the court will determine whether to request a reply brief from YTI.

IX

The court turns now to Wesley's § 1981-based racially hostile work environment claim.

A

In addition to arguing that Wesley's Title VII hostile work environment claim is not properly exhausted, YTI maintains that the alleged harassment did not affect a term, condition, or privilege of employment. YTI posits that Wesley has only identified three racial slurs by coworkers over the course of fourteen years, and that, while boorish and offensive, this conduct does not constitute a hostile work environment. YTI also contends that Wesley's speculation about harassment suffered by other employees is irrelevant.

Additionally, YTI asserts that summary judgment is proper because Wesley failed to take advantage of the corrective opportunities that YTI offered him. YTI points to its Policy Guide to Workplace Conduct, which specifically outlines a complaint procedure to report prohibited conduct. YTI argues that, despite these available remedial measures, Wesley neither reported nor complained about any of the alleged racial slurs, graffiti, or an incident involving the display of a noose. YTI also contends that Wesley's Title VII hostile work environment claim is time-barred

because the alleged harassment occurred more than 300 days before he filed his EEOC charge. YTI does not argue in its motion that Wesley's § 1981 claim is time-barred. Because the court has dismissed Wesley's Title VII hostile work environment claim as not properly exhausted, it need not address whether that claim is barred by limitations.

YTI maintains that Wesley cannot prove that YTI failed to take prompt remedial action, because he unreasonably failed to take advantage of the available corrective opportunities. Wesley responds that there is evidence that, *inter alia*, Caucasian coworkers displayed symbols of racial hatred by entering into the break room and dock with a noose, and placing a noose on the edge and back of a forklift (one of which was left hanging for over one year); creating racial graffiti, including drawings, on tables, bathroom walls, dock beams, and trailers; a Caucasian employee stood on the dock and performed a "Hitler salute"; confederate flags were displayed on motorcycles parked in the dock and were worn on coworkers' heads; Ku Klux Klan and Aryan Nation symbols were displayed; there was negative graffiti against employees who were affiliated with minority employees; Caucasian employees made derogatory racial comments directly to Wesley; feces and urine were placed on forklifts; grease was smeared on the vehicles and telephones of minority employees; and tires were cut, and cars were keyed, dented, and scratched.

Wesley also posits that otherwise-untimely allegations supporting his hostile work environment claim are relevant evidence under the "continuing violation" doctrine. He contends that under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002), untimely conduct that constitutes part of a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." P. Br. 2. Wesley contends that because at least some of the racially hostile acts fall within the time period, "all such acts" are not time-barred.

YTI replies that most of Wesley's allegations, insofar as they concern racial graffiti and the display of nooses, are time-barred under either § 1981 or Title VII. YTI says they cannot be saved under the "continuing violation" doctrine because the non-time-barred incidents did not relate directly to Wesley. YTI also contends that Wesley is unable to show that the harassment was so severe and pervasive that it destroyed his "opportunity to succeed in the workplace," D. Reply Br. 21, and that vague allegations and anecdotal accounts about harassment involving other employees are irrelevant to Wesley's claim and are not admissible. YTI also renews its position that Wesley failed to take advantage of

available corrective opportunities.[11]

B

To establish a prima facie case of a racially hostile work environment under § 1981, Wesley must show that (1) he belongs to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) YTI knew or should have known of the harassment in question and failed to take prompt remedial action. *See Ramsey v. Henderson*, 286 F.3d 265, 268 (5th Cir. 2002) (addressing hostile work environment under Title VII).

Harassment is based on race if "the complained-of conduct had a racial character or purpose." *King*, 2007 WL 2005541, at *10 (quoting *Harris-Childs v. Medco Health Solutions, Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.)). Moreover, Wesley must demonstrate a "connection between the allegedly

---

[11]Because YTI only alleged that Wesley's Title VII hostile work environment was time-barred in its motion for summary judgment, and did not address the timeliness of Wesley's § 1981 claim until it filed its reply brief, the court will not consider YTI's timeliness argument or grant summary judgment in its favor on that basis. *E.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (quoting *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)), *appeal docketed*, No. 07-10558 (5th Cir. May 22, 2007). The court need not address whether Wesley's Title VII-based hostile work environment claim is time-barred, however, because, as explained *supra* at § IV(C), Wesley did not exhaust this claim.

harassing incidents and [her] protected status." *Id.* (quoting *Harris-Childs*, 2005 WL 562720, at \*6).

To meet the fourth element, Wesley must demonstrate that the harassment affected a term, condition, or privilege of employment. "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268 (internal quotations omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Title VII (and, by implication, § 1981) prohibit "a [racially] objectionable environment [that is] both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (addressing sex discrimination) (citing *Harris*, 510 U.S. at 21-22).

"Actionable harassment must involve 'racially discriminatory intimidation, ridicule[,] and insults.'" *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (applying Title VII case-law to claim brought under 42 U.S.C. §§ 1981 and 1983), *abrogated in part on other grounds by Burlington N.*, 548 U.S. 53, 126 S.Ct. at 2414; *see also Harris*, 510 U.S. at 21. "In determining whether a workplace constitutes a hostile work environment, courts must consider the

following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ramsey*, 286 F.3d at 268 (5th Cir. 2002) (quoting *Walker*, 214 F.3d at 625). Merely offensive conduct is not actionable. *Harris*, 510 U.S. at 21.

As noted, claims brought under § 1981 are generally subject to a four-year limitations period. *See Jones*, 541 U.S. at 382 (holding that four-year limitations period established by 28 U.S.C. § 1658 applies to § 1981 actions based on employment discrimination claims made possible by the 1991 Civil Rights Act amendments to § 1981). Accordingly, Wesley cannot recover under § 1981 based on acts that occurred before November 18, 2001——i.e., four years prior to filing suit——absent a showing that the otherwise-time-barred acts are part of a "continuing violation."

C

Having considered Wesley's evidence, the court holds that there are genuine issues of material fact that preclude summary judgment on Wesley's § 1981-based hostile work environment claim. Specifically, the court concludes that there is a genuine issue of material fact whether the alleged harassment was so severe and pervasive that it affected a term, condition, or privilege of Wesley's employment.

The Fifth Circuit has noted that "[t]he making of nooses is at least arguably objectively offensive, as it evokes the image of race-motivated lynching," and that "[t]he frequent making of nooses, coupled with the presence of allegedly offensive racial remarks and the presence of [Ku Klux Klan] graffiti at the worksite raise a fact issue regarding whether the work atmosphere . . . was racially hostile." *Bell v. Ingalls Shipbuilding, Inc.*, 207 F.3d 657, at *1 (5th Cir. 2000) (per curiam) (reversing summary judgment in part) (unpublished table decision). Wesley has adduced evidence of at least three instances in which he observed nooses displayed in the workplace "around 2003," which is well within the four-year statutory limitations period for § 1981 claims. *See* P. App. 652. Wesley has also adduced evidence of Ku Klux Klan graffiti at the worksite and offensive racial remarks, at least some of which a reasonably jury could find occurred within the limitations period.

Wesley's alleged failure to take advantage of available corrective opportunities does not alter the court's reasoning. As noted, YTI argues that summary judgment is proper because, despite YTI's complaint procedure and policy prohibiting discrimination, retaliation, and harassment, Wesley never reported or complained about the alleged racial slurs, graffiti, or noose. YTI therefore contends that Wesley cannot prove that YTI failed to take prompt remedial action, because he unreasonably failed to take advantage of the available corrective opportunities. YTI relies on two Fifth

Circuit cases that address sexual harassment claims.

YTI's reliance on *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 329-30 (5th Cir. 2004), and *Woods v. Delta Beverage Group*, 274 F.3d 295, 301 (5th Cir. 2001), is misplaced. Unreasonable failure to take advantage of preventive or corrective opportunities provided by the employer is an affirmative defense to a Title VII sexual harassment suit. *See Woods*, 274 F.3d 295, 300 n.3; *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). It is also an affirmative defense to a race-based hostile work environment claim. *See, e.g., White v. BFI Waste Servs., LLC*, 375 F.3d 288, 299 (4th Cir. 2004) (applying this affirmative defense in race discrimination context). Because YTI will bear the burden of proving this affirmative defense at trial (assuming it is properly raised here), it "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex.*, 878 F. Supp. at 962 (quoting *Fontenot*, 780 F.2d at 1194). YTI has not met this heavy burden. Specifically, the affirmative defense requires that the employer establish that the employee *unreasonably* failed to take advantage of corrective opportunities. *Hockman*, 407 F.3d at 329-330. YTI makes no attempt to address the reasonableness *vel non* of Wesley's alleged failure to take advantage of YTI's corrective opportunities, despite the fact that Wesley contests this very issue. *See* P. Br. 18-19. Accordingly, the court denies YTI's motion for summary judgment on Wesley's

§ 1981 racially hostile work environment claim.

X

The court now addresses six additional pending motions in this case.

A

On May 23, 2007 YTI filed a motion for leave to file appendix in support of summary judgment reply brief, or, in the alternative, motion for leave to file amended reply brief. YTI initially submitted a reply brief appendix with its summary judgment reply, without first obtaining leave of court. Applying the rule in *Dethrow v. Parkland Health Hospital System*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.), the court issued an order stating that it would not consider the appendix in deciding YTI's summary judgment motion because YTI had first failed to obtain leave of court. YTI immediately moved for leave to file the reply appendix. Because the evidence contained in YTI's proposed reply brief appendix would not, if considered, affect the court's decision, it denies YTI's motion as moot.

B

On April 20, 2007 Wesley filed a motion to strike YTI's summary judgment evidence. Specifically, Wesley moves to strike the Derry affidavit, an "unsworn, undated statement" of employee Wilson, the EEOC determination letter, the letter of discharge, and the minutes of the grievance committee hearing. Because the court

has not relied on this evidence in granting summary judgment in
YTI's favor, the court denies this motion as moot.[12]

C

On May 21, 2007 YTI filed a motion to strike plaintiff's
response to defendant's motion for summary judgment, or, in the
alternative, objections and motion to strike plaintiff's summary
judgment evidence. YTI points to Wesley's failure to re-file his
second amended response brief in 12-point font, as directed by this
court's April 24, 2007 order, and to his failure to file an
appendix that complied with the Local Rules. The court has
discussed some of these deficiencies *supra* at § II. YTI also moves
to strike specific portions of Wesley's appendix as conclusory,
unsubstantiated, speculative, based on subjective belief, hearsay,
for lack of personal knowledge, nonspecific references as to time
and subject matter, and as irrelevant to Wesley's claims. YTI also
moves to strike parts of various affidavits that Wesley has
submitted in his appendix. Because the court has either granted
summary judgment in favor of YTI notwithstanding the evidence to
which objection has been made, or because it has denied summary
judgment and has not relied on the objected-to evidence in doing

_____

[12]The court addresses the Derry affidavit only to the extent
necessary to address Wesley's argument that specifically refers to
it. *See supra* § VI(D)(1). And although the court has referred to
the fact that Wilson warned Wesley about possessing pornographic
materials in the workplace, this basic fact is undisputed. *See* P.
Resp. 33-34. Thus the court need not rely on Wilson's statement,
to which Wesley objects.

so, the court denies YTI's motion as moot.

D

On May 1, 2007 YTI filed a motion for leave to file a first amended answer and affirmative and other defenses to plaintiff's complaint. Specifically, YTI seeks to add the affirmative defenses of laches, estoppel, waiver, and ratification. YTI argues that this proposed amendment is based on information obtained after YTI filed its original answer, and that, pursuant to Fed. R. Civ. P. 15(a)(2), it should be granted leave to file its first amended answer.

Wesley responds that the deadline for filing amendments to pleadings has passed, and he argues that YTI could have filed this amendment at the conclusion of depositions in January 2007. Wesley also maintains that YTI's counsel mentioned to Wesley's counsel in "late winter" that she was "thinking of filing a defense of laches." Instead, Wesley argues, YTI "sat on its rights" and waited to file the motion for leave to amend until shortly before the close of discovery. According to Wesley, allowing the amendment would deprive him of the opportunity to issue written discovery on the facts relating to the new defenses. Wesley also notes that the amendment comes after YTI filed its summary judgment motion.

Under the court's scheduling order and its March 5, 2007 order granting Wesley's request for a 120-day extension of all pretrial

deadlines, the deadline for filing motions for leave to amend pleadings was May 1, 2007. YTI's motion was filed May 1, 2007. The court therefore applies a "presumption of timeliness." *Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.). The court also follows the liberal standard of Rule 15(a)(2)[13] to determine whether leave to amend should be granted. Under that standard, "[t]he court should freely give leave when justice so requires." Rule 15(a)(2). The court discerns no reason from Wesley's cursory response (which is completely unsupported by any case or rule citation or legal analysis) to deny YTI's timely motion for leave to file a first amended answer. The court therefore grants the motion and directs YTI to file the amended answer, electronically or on paper, within ten business days of the date this memorandum opinion and order is filed.

The discovery deadline in this case was originally scheduled for February 1, 2007. Even considering the court's 120-day extension of this deadline, the discovery deadline has lapsed. Thus, in the interest of fairness, the court grants Wesley an additional 60 days in which to conduct any needed discovery relating to YTI's affirmative defenses of laches, waiver, estoppel, and ratification. In so deciding, the court expresses no view on

---

[13]The restyled Federal Rules of Civil Procedure took effect December 1, 2007. This standard is now found in Rule 15(a)(2).

the merits or availability of these defenses to the remaining § 1981 claims. *Poly-Am., Inc.*, 2002 WL 206454, at *1–*2 (declining to address merits in context of Rule 15(a), the predecessor to renumbered Rule 15(a)(2)).

E

On June 4, 2007 Wesley filed a motion for leave to file a third amended complaint,[14] and on June 22, 2007 he filed an amended motion for leave to file a third amended complaint. Under the court's scheduling order and its March 5, 2007 order granting plaintiff's request for a 120-day extension of all pretrial deadlines, the deadline for filing motions for leave to amend pleadings was May 1, 2007. Because the court's scheduling order deadline to amend pleadings had expired when Wesley filed his motion and amended motion, the court considers first whether Wesley has shown that "good cause" exists to modify the scheduling order deadline, under the standard of Rule 16(b)(4),[15] before it reaches the more liberal standard set out in Rule 15(a)(2).

When the deadline to amend pleadings has expired, a court considering a motion to amend must first determine whether to

---

[14]The live pleading in this case is Wesley's complaint, and he has not previously amended his pleadings. Therefore, Wesley's proposed *third* amended complaint appears to be in reference to the related *Arrieta* litigation, from which Wesley's action was severed.

[15]Under the restyled Federal Rules of Civil Procedure, the good cause standard is now found in Rule 16(b)(4), which states that "[a] schedule may be modified only for good cause and with the judge's consent."

modify the scheduling order under the Rule 16(b)(4) good cause standard. *See S&W Enterprises, L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J). If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2).

The "good cause" standard focuses on the diligence of the party seeking to modify the scheduling order. *Am. Tourmaline Fields*, 1998 WL 874825, at *1 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause." *Id.*; *Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb. 2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). Instead, the movant must show that, despite his diligence, he could not reasonably have met the scheduling deadline. *Am. Tourmaline Fields*, 1998 WL 874825, at *1 (citing 6A Wright, et al., *Federal Practice & Procedure*, § 1522.1 at 231 (2d ed. 1990)); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters.*, 315 F.3d at 535).

Wesley has not done so.  In his amended motion, he merely attaches his proposed third amended complaint and recounts the nature of the proposed amendments.  Wesley does not even attempt to show that, despite his diligence, he could not have reasonably met the scheduling deadline.  And the court declines to consider Wesley's "good cause" arguments made for the first time in his reply brief.  *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp*, 749 F. Supp. at 772.  The court followed this same approach above when addressing an argument raised by YTI, and fairness requires that both sides be treated equally in this respect.  The court therefore denies Wesley's motion and amended motions for leave to file plaintiff's third amendment complaint.

F

On July 3, 2007 Wesley filed a motion to strike expert witness and to exclude expert testimony.  As a result of today's decision and of a possible later decision dismissing Wesley's § 1981-based retaliation claim, it appears that this motion is moot for the reasons that it relates to testimony that is no longer relevant.  Accordingly, the court denies the motion without prejudice as moot.  Within the 60-day period otherwise afforded Wesley in this memorandum opinion and order, he may attempt to demonstrate why the motion is not moot.  If the court concurs, it will restore the motion to active status and decide it.

*     *     *

Accordingly, the court grants in part and denies in part YTI's March 1, 2007 motion for summary judgment. The court grants summary judgment dismissing all of Wesley's Title VII claims. The court also grants summary judgment dismissing all of Wesley's § 1981 claims, except his discrimination claims based on disproportionate workload, break times, attendance policy, and disparate discipline, his racially hostile work environment claim, and his retaliation claim.

The court raises *sua sponte* that YTI is entitled to summary judgment dismissing Wesley's § 1981-based retaliation claim. If he desires to oppose summary judgment on this basis, he must file a supplemental brief, and an appendix that contains any supporting evidence, within 60 days of the date this memorandum opinion and order is filed.

The court grants YTI's May 1, 2007 motion for leave to file a first amended answer and affirmative and other defenses to plaintiff's original complaint. YTI must file the amended answer, electronically or on paper, within ten business days of the date this memorandum opinion and order is filed.

The court denies the following motions: (1) Wesley's April 20, 2007 motion to strike defendant's summary judgment evidence; (2) YTI's May 21, 2007 motion to strike plaintiff's response to defendant's motion for summary judgment, or, in the alternative,

objections and motion to strike plaintiff's summary judgment evidence; (3) YTI's May 23, 2007 motion for leave to file appendix in support of summary judgment reply brief, or in the alternative, motion for leave to file amended reply brief; (4) Wesley's June 4, 2007 motion for leave to file a third amended complaint; (5) Wesley's June 22, 2007 amended motion for leave to file a third amended complaint; and (6) Wesley's July 3, 2007 motion to strike expert witness and to exclude expert testimony.

**SO ORDERED.**

February 4, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE