IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DON WESLEY,                          §
                                     §
            Plaintiff,               §
                                     § Civil Action No. 3:05-CV-2266-D
VS.                                  §
                                     §
YELLOW TRANSPORTATION, INC.,         §
C/O THE FRICK CO.,                   §
                                     §
            Defendant.               §

MEMORANDUM OPINION
AND ORDER

The court revisits this action for race-based employment discrimination and retaliation to determine whether defendant Yellow Transportation, Inc. ("YTI") is entitled to summary judgment dismissing plaintiff Don Wesley's ("Wesley's") 42 U.S.C. § 1981-based retaliation claim. Concluding that YTI is entitled to summary judgment, the court dismisses this claim.

I

The relevant background facts and procedural history of this case are set out in *Wesley v. Yellow Transportation, Inc.*, 2008 WL 294526, at *1 (N.D. Tex. Feb. 4, 2008) (Fitzwater, C.J.) ("*Wesley I*"), and need not be repeated at length. The court will add to them what is necessary to understand the present decision.

This is a race-based employment discrimination and retaliation action brought by Wesley against YTI under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Wesley alleged that YTI was liable for discharging

and otherwise discriminating against him based on his African-American race and for retaliation. YTI moved for summary judgment. In *Wesley I* the court, in pertinent part, dismissed all of Wesley's Title VII claims, granted in part and denied in part summary judgment on his § 1981-based claims, and raised *sua sponte* that YTI is entitled to summary judgment dismissing Wesley's § 1981-based retaliation claim.[1] The court granted Wesley 60 days to file a supplemental brief and appendix containing any supporting evidence in opposition to granting summary judgment on this basis. Wesley has filed a supplemental brief and an appendix containing his previous summary judgment record as well as additional testimonial evidence from B.J. Rodgers ("Rodgers"), the distribution center manager who discharged Wesley; Rodgers' assistant, supervisor Audy Maggard ("Maggard"); and former supervisors Freeman Dwayne Harris ("Harris") and Eric Redish ("Redish").[2]

---

[1]The court explained:

> [b]ecause YTI only moves for summary judgment on Wesley's Title VII-based retaliation claim and has not with sufficient clarity moved for summary judgment on his § 1981 retaliation claim, it would be error to grant summary judgment on that claim at this time.

*Wesley I*, 2008 WL 294526, at *16.

[2]The court has not invited YTI to file a reply brief to Wesley's response because the court has determined, after reviewing the pleadings Wesley has filed, that YTI is entitled to summary judgment. Therefore, it is unnecessary for YTI to file a reply brief.

II

A

Wesley contends that he complained and protested against racial discrimination at YTI at various times during his employment, and that this conduct constitutes the 'protected activity' for which he was discharged. Although Wesley refers to several examples of instances when he complained about discrimination, Wesley primarily relies on his participation in picketing and protesting against YTI to support his retaliatory discharge claim. Wesley avers that a causal connection between the protected conduct and the adverse action is evidenced by the close temporal proximity between his participation in the picketing in late 2004 and his discharge in March 2005. Wesley also relies on the Rodgers and Maggard depositions to raise new arguments in support of his contention that YTI's proffered reason for discharging Wesley was pretextual. Specifically, Wesley maintains that Rodgers and Maggard offer conflicting and inherently unbelievable testimony regarding how they became aware of Wesley's playing of a pornographic video at work.[3] Wesley also points to YTI's discharge letter, which, in addition to the playing of the pornographic video, states as a ground for discharge "theft of

---

[3]Wesley also contends that Maggard's and Rodgers' testimony regarding other issues is not credible, and that this indicates retaliatory motive. To the extent that such testimony does not relate to YTI's proffered explanation for Wesley's discharge, the court need not address it.

company time."⁴  Wesley contends that many Caucasian employees regularly took extended breaks and were not disciplined, and that YTI's reliance on these grounds to discharge him is evidence of pretext.

B

In *Wesley I* the court assumed *arguendo* that Wesley had established a prima facie case of retaliation based on his complaints and picketing and ultimate discharge.  The court held, however, that Wesley had failed to adduce evidence that the adverse action would not have occurred but for the protected conduct. *Wesley I*, 2008 WL 294526, at *16.  In addition to relying on the Rodgers, Maggard, Harris, and Redish depositions, Wesley also renews several arguments that he raised in his prior summary judgment briefing.  Because the sole issue now before the court is whether Wesley has satisfied his burden of adducing evidence that his discharge would not have occurred but for the protected

---

⁴The discharge letter reads, in relevant part:

> Upon review of security surveillance tapes taken on February 26, 2005, you were observed by [security] between 10:29-10:31 and 12:10-12:19 playing pornographic videos in the E-dock break room.  Your break time is between 10:10-10:25 and 12:00-12:15.  You were playing pornographic videos on company time and displaying pornographic material [] in clear violation of the Policy Guide to Workplace Conduct . . . . you are discharged . . . for theft of company time and outrageous conduct.

P. App. 722.

conduct, the court need not discuss Wesley's arguments that are already addressed or resolved in *Wesley I*.

C

As the court noted in *Wesley I*, "[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected . . . was a 'but for' cause of the adverse employment decision." *Id.* at *15 (citations and internal quotation marks omitted). Once a defendant articulates a legitimate, nondiscriminatory reason for the challenged employment action, "summary judgment is appropriate unless [the plaintiff] can prove that [defendant's] rationale is pretextual." *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 408 (5th Cir. 1999). "The *McDonnell Douglas* evidentiary framework applies to Title VII retaliation claims brought under a pretext theory. Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose."[5] *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

In analyzing pretext in the unlawful discrimination context, the Fifth Circuit has recognized that "a prima facie showing, combined with evidence of pretext, may not always be enough to

---

[5]The same summary judgment criteria apply to retaliation claims under § 1981 and Title VII because they are parallel causes of action. *See Foley v. Univ. of Houston Sys.,* 355 F.3d 333, 340 n.8 (5th Cir. 2003). "Each requires proof of the same elements in order to establish liability." *Id.*

defeat judgment as a matter of law[.]" *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 724 (5th Cir. 2002). "[I]f the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred, the employer may be entitled to judgment in its favor." *Id.* (internal quotation marks omitted) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

D

Assuming *arguendo* that Wesley has presented some evidence showing that YTI has not fully accounted for the details of how it became aware of Wesley's playing of the pornographic video, and that this somewhat suggests that its explanation for Wesley's discharge is pretextual, this proof of pretext would not allow a reasonable trier of fact to find that retaliation was the real reason for the employment decision. *See Price,* 283 F.3d at 723-24 (quoting *Reeves,* 530 U.S. at 148, for the proposition that "there will be cases where the plaintiff establishes both a prima facie case and some evidence of pretext, yet no rational factfinder could conclude that the action was discriminatory." (internal quotation marks omitted)). Rodgers and Maggard both testified that they could not recall the identity of the person who complained about Wesley's playing a pornographic video at work. *See* P. App. 659, 737. Although Maggard stated that he did not recall whether the

complainant requested anonymity, P. App. 737, Rodgers testified that it was his understanding that "it was an anonymous employee that complained," *id.* at 661.

A reasonable trier of fact could not infer pretext or retaliation from the testimony of Rodgers and Maggard that they were unable to recall the identity of the complainant. Because the depositions were taken two years after Wesley was terminated, the trier of fact could not reasonably draw such an inference from Rodgers' and Maggard's inability to recall all the circumstances surrounding Wesley's discharge. Moreover, according to the discharge letter and Rodgers' testimony, it appears that in deciding to terminate Wesley, YTI principally relied on a review of a surveillance video that showed Wesley playing the pornographic video in the break room, rather than simply on having received a complaint. As such, lack of clarity in YTI's account of how it first became aware of Wesley's conduct would not enable a reasonable trier of fact to infer that the asserted justification for discharge was pretextual.

Wesley does not dispute the factual accuracy of YTI's account of his conduct, and he in fact admits that he played a pornographic video during company time. *See Wesley I*, 2008 WL 294526, at *9. This is not a case in which questions regarding an employer's asserted justification cast doubt over the accuracy of that employer's account of the conduct that resulted in the discharge.

*Cf., e.g., Shackelford*, 190 F.3d at 409 (holding that plaintiff's evidence rebutting factual accuracy of employer's account of plaintiff's conduct supported inference of pretext).[6] In these circumstances, a reasonable trier of fact could not find that the inability of certain managers to recall the identity of the complainant demonstrates that the reasons given for terminating him are pretextual.

Wesley's contention that other employees took extended break times without being disciplined is similarly inadequate to enable a reasonable trier of fact to find pretext. It is clear that YTI did not rely only on his having taken an extended break; the discharge letter explains that Wesley played the pornographic video after his break had ended. A reasonable trier of fact could at most infer from the discharge letter that Wesley's conduct during work time──characterized as "theft of company time"──was treated more as an aggravating factor than as an independent ground for discharge. As such, a reasonable trier of fact could not find that the conduct that resulted in Wesley's discharge was comparable to the cited examples of extended break times that did not result in terminations.

---

[6]In addition to relying on the plaintiff's rebuttal account as evidence of pretext, the *Shackelford* panel also relied on the suspicious timing of the termination, which occurred within days of the protected activity, to conclude that there was a genuine issue of material fact as to whether the termination was retaliatory. *See Shackelford*, 190 F.3d at 409.

Moreover, Rodgers' and Maggard's deposition testimony in other respects undermines rather than supports Wesley's contention that he would have not been fired absent his complaints of discrimination and participation in the 2004 picketing.  Wesley has not adduced any evidence that Rodgers and Maggard—the two primary YTI personnel involved in the discharge—were even aware that Wesley was involved in the picketing.

Wesley argues that "Rodgers . . . probably became aware that some of the men including Wesley were out picketing because somebody noticed it and notified a supervisor and he walked over and noticed it."  P. Br. 12.  "[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."  *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) (addressing retaliation under Title VII).  "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).  Because Wesley bears the burden of demonstrating that YTI knew about the protected activity, it is not enough for him to simply assert that Rodgers *probably* became aware that men, including Wesley, were out picketing.  In his deposition testimony, Rodgers conceded that he was aware of the picketing in November and

December 2004.  *See* P. App. 720-21.  He also averred that he addressed the picketing with his Human Resources Manager, and testified that he was concerned about the effect that the picketing could have on customers.  *Id.*  He also averred, however, that he did not remember any conversations with Wesley about the picketing.  *Id.* at 721.  Wesley has therefore failed to adduce any evidence that Rodgers was actually aware of Wesley's involvement in the picketing.  Similarly, Wesley has produced no evidence that Maggard was aware of the picketing, much less that he was aware of Wesley's involvement in it.

In sum, Wesley has not only failed to present evidence that the decisionmakers were aware of his participation in the picketing, he has also failed to adduce proof regarding the circumstances of the picketing, his participation in it, or internal management communications regarding the picketing from which a reasonable trier of fact could infer that those involved in the discharge decision were aware of Wesley's involvement in the picketing.

The court therefore concludes that Wesley has failed to present evidence from which a reasonable trier of fact could find that YTI's proffered reason for terminating his employment was pretextual, or that his discharge would not have occurred but for his participation in the protected conduct.  Accordingly, the court grants summary judgment dismissing Wesley's § 1981-based

retaliation claim.

**SO ORDERED.**

May 2, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE