IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DON WESLEY,                          §
                                     §
                Plaintiff,           §
                                     § Civil Action No. 3:05-CV-2266-D
VS.                                  §
                                     §
YELLOW TRANSPORTATION, INC.,         §
C/O THE FRICK CO.,                   §
                                     §
                Defendant.           §

MEMORANDUM OPINION
AND ORDER

The court raises *sua sponte* that defendant Yellow
Transportation, Inc. ("YTI") is entitled to summary judgment
dismissing plaintiff Don Wesley's ("Wesley's") disparate treatment
claim under 42 U.S.C. § 1981. The court grants Wesley 30 days from
the date of this memorandum opinion and order to file an opposition
response demonstrating that summary judgment should not be entered
dismissing this claim.

I

In its February 4, 2008 memorandum opinion and order, the
court granted in part and denied in part YTI's motion for summary
judgment. *See Wesley v. Yellow Transp., Inc.*, 2008 WL 294526, at
*22 (N.D. Tex. Feb. 4, 2008) (Fitzwater, C.J.). In relevant part,
the court denied summary judgment as to Wesley's § 1981-based
disparate treatment claim. *See id.* at *12-*13.

In a memorandum opinion and order filed today involving claims
of other plaintiffs against YTI, the court has concluded that

plaintiffs must allege that YTI subjected them to an "ultimate employment decision" to make out a prima facie case of disparate treatment under § 1981. *Arrieta v. Yellow Transp., Inc.*, 2008 WL _____, at *___, slip op. at 10-12 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.). In view of this conclusion, and as indicated in *Arrieta, id.* at 12 n.7, the court now revisits its earlier decision in this case and affords Wesley an opportunity to show why his § 1981-based disparate treatment claim should not be dismissed.

## II

Wesley's disparate treatment claim is based on his carrying a heavier work load than Caucasian coworkers, receiving less break time than Caucasian coworkers, and being warned by his supervisor about his attendance.[1] In its briefing, YTI contended that it was entitled to summary judgment dismissing Wesley's disparate treatment claim because none of these allegations constituted an adverse employment action, and he had therefore failed to establish a prima facie case of race discrimination. YTI argued that, in the context of a race discrimination claim, only "ultimate employment decisions" such as hiring, discharging, promoting, compensating, and granting leave constitute adverse employment actions. Wesley

---

[1]The court's memorandum opinion and order also mentions an allegation of disparate discipline, but the only disciplinary act Wesley alleges that he suffered is his discharge. The court granted summary judgment dismissing Wesley's discriminatory discharge claim because he failed to adduce evidence that would allow a reasonable jury to find that YTI's reason for discharging him was pretextual. *See Wesley*, 2008 WL 294526, at *12.

responded that Title VII[2] discrimination claims based on adverse employment actions are not limited to "ultimate employment decisions."  And he maintained that, even if Title VII claims are so limited, § 1981 claims are distinguishable and do not require an "ultimate employment decision."  For support, he cited two of this court's opinions: *Hayes v. MBNA Technology, Inc.*, 2004 WL 1283965 (N.D. Tex. June 9, 2004) (Fitzwater, J.), and *Core v. Sprint/United Management Co.*, No. 3:96-CV-2265-D, slip op. at 9-10 (N.D. Tex. Oct. 24, 1997) (Fitzwater, J.).

In denying summary judgment dismissing Wesley's disparate treatment claim, the court adopted his argument that § 1981 race discrimination claims do not have to be based on an "ultimate employment decision."  *See Wesley*, 2008 WL 294526, at *12-*13.  The court relied on *Hayes* and *Core* for its reasoning.  *See id.* at *12. Even before *Arrieta*, however, the court had determined that this view did not reflect the current state of the law in this circuit. Under current Fifth Circuit precedent, (1) race discrimination claims brought under Title VII and § 1981 are governed by the same standards, and (2) to establish a prima facie case of race discrimination, a plaintiff must have been subjected to an "ultimate employment decision."  *See, e.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Pegram v. Honeywell,*

---

[2]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

*Inc.*, 361 F.3d 272, 281-82 (5th Cir. 2004); *Dixon v. Moore Wallace, Inc.*, 2006 WL 1949501, at *8 (N.D. Tex. July 13, 2006) (Fitzwater, J.). The court must therefore revisit this aspect of its earlier decision denying summary judgment as to Wesley's § 1981-based disparate treatment claim.

## III

### A

The adverse employment action element of a race discrimination claim is the same under both Title VII and § 1981. The Fifth Circuit has consistently held that "race discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII." *Pegram*, 361 F.3d at 281 n.7; *see also Jones v. Robinson Prop. Group*, 427 F.3d 987, 992 (5th Cir. 2005) ("[T]he analysis under both [Title VII and § 1981] [is] identical, the only substantive differences between the two statutes being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies." (citations omitted)). The Fifth Circuit explicitly held in *McCoy* that its "precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims." *McCoy*, 492 F.3d at 560. *McCoy* held that, although the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53

(2006), altered the Fifth Circuit's "adverse employment action" standard in the context of *retaliation* claims, it did not affect the standard in the context of *discrimination* claims. *McCoy*, 492 F.3d at 559-60. Thus a plaintiff must show that he was subject to an ultimate employment decision, such as "hiring, granting leave, discharging, promoting, or compensating," to establish a prima facie case of discrimination under Title VII and § 1981. *Id.* at 559; *see also Pegram*, 361 F.3d at 282; *Dixon*, 2006 WL 1949501, at *8.[3]

B

As YTI contended in its briefing, Wesley has not alleged that he was subject to an ultimate employment decision. He has therefore failed to satisfy the adverse employment action element of the prima facie case of discrimination.

First, receiving a disproportionate work load does not constitute an adverse employment action because it is not an ultimate employment decision. *See Hart v. Life Care Ctr. of Plano*, 243 Fed. Appx. 816, 818 (5th Cir. 2007) (per curiam) (holding that employee's being assigned more difficult tasks than Hispanic coworkers did not constitute adverse employment action); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (holding that being assigned an unusually heavy work load is

---

[3]To the extent *Hayes* and *Core* hold otherwise, they do not accurately state the governing law of the Fifth Circuit, and neither this court nor Wesley can rely on them in this case.

merely administrative matter and not an adverse employment action); *Martin v. Kroger Co.*, 65 F.Supp.2d 516, 539 (S.D. Tex. 1999) (holding that increased work load does not rise to level of adverse employment action).

Second, receiving unequal break times is not an actionable adverse employment action. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 486 (5th Cir. 2008) (holding that denials of break requests were nothing more than "petty slights" or "minor annoyances" and not actionable); *Stanley v. Univ. of Tex. Med. Branch, Galveston*, 425 F.Supp.2d 816, 824 (S.D. Tex. 2003) ("[S]urely, not receiving equal restroom breaks and being asked to move heavy objects does not rise to the level of an actionable Title VII claim.").

Third, disciplinary warnings do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions. *See Roberson v. Game Stop/Babbage's*, 152 Fed. Appx. 356, 360 (5th Cir. 2005) (per curiam) (admonishing courts "not to expand the definition of adverse employment action to include 'events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything that might jeopardize employment in the future'" (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999))); *Dixon*, 2006 WL 1949501, at \*9; *Cannon v. St. Paul Fire & Marine Ins. Co.*, 2005 WL 1107372, at \*3 (N.D. Tex. May

6, 2005) (Godbey, J.) (holding that requiring employee to participate in and complete performance improvement plan was not adverse employment action); *Martin*, 65 F.Supp.2d at 536 ("[N]egative performance evaluations, even if undeserved, are not adverse employment actions giving rise to actionable discrimination claims.").

IV

Because Wesley has not alleged that he was subject to an ultimate employment decision, he has failed to establish a prima facie case of disparate treatment under § 1981 as a matter of law. Accordingly, Wesley is given 30 days from the date of this memorandum opinion and order to file a written response establishing why his § 1981-based disparate treatment claim should not be dismissed on summary judgment. After the court receives Wesley's response, it will determine whether to invite YTI to file a reply.

**SO ORDERED**.

December 12, 2008.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE